# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DONNA TURKOS,** : | No. 3:14cv2243 |
|         **Plaintiff** : | |
| : | **(Judge Munley)** |
|         **v.** : | |
| : | |
| **DUPONT BOROUGH,** : | |
| **JASON KWIATKOWSKI and** : | |
| **JOHN SARANCHUK,** : | |
|         **Defendants** : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court for disposition are motions for summary judgment filed by all the parties in this civil rights action. The motions have all been briefed and are ripe for disposition.

**Background**

The general facts of this case are that plaintiff Donna Turkos complained to the Dupont Borough Police about her ex-husband violating a protection from abuse order (hereinafter "PFA"). After investigating, the police determined that no PFA was in effect and arrested the plaintiff instead of her former husband. Specifically, the facts are as follows:

Plaintiff Donna Turkos had been married to non-party David Turkos. Plaintiff obtained a PFA against him. On May 17, 2013, plaintiff met with Defendant Jason Kwiatkowski, a police officer for Dupont Borough. She

indicated that she had a valid PFA order against her ex-husband and that he had violated it. (Doc. 49, Pl.'s Statement of Facts, (hereinafter "Pl. SOF") ¶ 2). Instead of arresting David Turkos, however, on June 19, 2013, Defendant Kwiatkowski arrested plaintiff and charged her with the following: 1) Tampering with public records or information, 18 PA. CONS. STAT. ANN. § 4911(a)(2); 2) False reports to law enforcement authorities, 18 PA. CONS. STAT. ANN. § 4906(a); and 3) Unsworn falsification to authorities, 18 PA. CONS. STAT. ANN. § 4904(a)(1). (Pl. SOF ¶ 1).

Kwiatkowski based the charges on the premise that although she reported to the police that she had a valid PFA order against David Turkos, she actually did not have one. (Pl. SOF ¶ 2). Plaintiff asserts that at the time she did, in fact, have a valid PFA order against her ex-husband and that she presented evidence of such to Defendant Kwiatkowski who nonetheless proceeded with the charges. A full preliminary hearing was held on the charges at which Defendant Kwiatkowski and David Turkos testified. After the hearing, the court dismissed the charges against plaintiff.

Subsequently, plaintiff instituted the instant civil rights action. The amended complaint asserts the following four causes of action: 1) violation

of plaintiff's First Amendment rights against Defendants Kwiatkowski and Saranchuk under 42 U.S.C. § 1983 (Doc. 40, Am. Compl. ¶¶ 74-77); 2) Malicious prosecution against Defendants Kwiatkowski and Saranchuk (Id. ¶¶ 78-84); 3) 42 U.S.C. § 1983 against the Defendant Dupont Borough (Id. ¶¶ 85-87); and 4) Abuse of power against Defendants Kwiatkowski and Saranchuk.  Plaintiff seeks, *inter alia*, compensatory damages, punitive damages and attorneys' fees.  (Id. ¶ 91).

**Jurisdiction**

As this case is brought pursuant to 42 U.S.C. § 1983 for a violation of plaintiff's civil rights, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").  We have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  See

Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its

pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

All of the parties have filed motions for summary judgment. We will address them all in turn beginning with plaintiff's motion.

**I. Plaintiff's motion**

Plaintiff filed a motion for partial summary judgment regarding Defendant Kwiatkowski, who is named in Count One and Count Two of the complaint. She claims that no questions of fact exist regarding whether Defendant Kwiatkowski, acting under color of state law, engaged in retaliatory prosecution in violation of the First Amendment and that he maliciously prosecuted plaintiff in violation of state law. Accordingly, plaintiff seeks judgment on these two counts. We will discuss these counts separately.

**A. First Amendment Retaliation section 1983**

Count one alleges a claim of retaliation for exercise of first amendment freedom of speech rights. (Doc. 40, Am. Compl. ¶¶ 74-77). Plaintiff claims that she engaged in protected speech by complaining to the

5

police about alleged violations of a PFA.  Then the police officer to whom she complained, Defendant Jason Kwiatkowski, retaliated against her by filing criminal charges against her.

The elements of a First Amendment retaliation claim are: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006); Considine v. Jagodinski, 646 F. App'x  283, 286  (3d Cir. 2016). Additionally, plaintiff must establish an absence of probable cause for the charges that were brought.  Hartman v. Moore, 547 U.S. 250, 265 (2006).

The first issue that we will discuss is whether the plaintiff can establish a lack of probable cause for the arrest.  "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995).

Instantly, the matter of probable cause is addressed in the Affidavit of Probable Cause that Defendant Kwiatkowski filed in support of the

charges. (Doc. 50 at 47-50, Pl. Ex. 10). The affidavit provides as follows: Kwiatkowski contacted Luzerne County 911, which informed him that there was no record of an active PFA. (Id. at 48). The Luzerne County Sheriff's Department also indicated that there was no active PFA. (Id.) Defendant Saranchuk performed a follow-up investigation, contacting both entities again and being told that no active PFA existed. (Id.) He also interviewed the subject of the alleged PFA, David Turkos, who provided Saranchuk with court documents demonstrating that there was not an active PFA against him. (Id.)[1]

---

[1] Kwiatkowski telephoned the district attorney's office and spoke with an assistant district attorney, Matthews-Lada who "gave her approval" regarding the charges or at least told the officer that he did not need approval and it was up to his discretion whether to file the charges. Plaintiff argues that the assistant district attorney did not approve the charges. An issue of fact does exist as to the conversation between the assistant district attorney ("ada") and the police officer. The ada asserts that she told Kwiatkowski not to charge perjury, but for the other charges he did not need approval. (Doc. 52-4, Matthews Dep. at 6). Thus, she did not tell him not to file the charges, whether the officer interpreted that as approval is a question of fact. The stories of the interaction of the ada and the police officer differ in other ways, for example, whether the ada told Kwiatkowski that he could use her name. The ada testified that she told the officer that the charges sounded okay but she did not tell him to put her name on the criminal complaint because the charges did not require ada approval. (Id. at 62-63). Whether or not the defendant had the ada's approval for the charges, however, does not go to whether the underlying facts establish probable cause. Thus, the defendant's interactions with the ada are not relevant to our probable cause analysis.

7

Based upon all of this evidence, a reasonable person could have concluded that a crime had been committed and that it was the plaintiff who had committed it. That is, that plaintiff had tried to enforce a PFA order that was no longer in effect. The crimes Kwiatkowski charged plaintiff with include: 1) Tampering with public records or information, 18 PA. CONS. STAT. ANN. § 4911(a)(2)[2]; 2) False reports to law enforcement authorities, 18 PA. CONS. STAT. ANN. § 4906(a)[3]; and 3) Unsworn falsification to authorities, 18 PA. CONS. STAT. ANN. § 4904(a)(1).[4] (Doc. 50, Criminal Compl., at 2).

According to the evidence of record, Defendant Kwiatkowski based the first charge on his investigation and his conclusion that plaintiff did not

---

[2] Tampering with public records is defined as: "A person commits an offense if he: . . . (2) makes, presents or uses any record, document or thing knowing it to be false, and with the intent that it be taken as a genuine part of information or records referred to in paragraph (1) of this subsection[.]"  18 PA. CONS. STAT. ANN. § 4911(a)(2).

[3] False reports, falsely incriminating another, is defined as "a person who knowingly gives false information to any law enforcement officer with intent to implicate another commits a misdemeanor of the second degree." 18 PA. CONS. STAT. ANN. § 4906(a).

[4] The law provides that "A person commits a misdemeanor of the second degree if, with intent to mislead a public servant in performing his official function, he: (1) makes any written false statement which he does not believe to be true." 18 PA. CONS. STAT. ANN. § 4906(a).

have a valid PFA order against her former husband.  Thus, he concluded that she had tampered with records to make it appear as if she did have a valid order.  The information that Defendant Kwiatkowski possessed and developed in his investigation further indicated that plaintiff provided false information to him to implicate her former husband in a PFA violation to support the second charge.  Finally, to support the last charge, it is noted that plaintiff made a written statement, which the police alleged was false.  Probable cause existed for these charges and plaintiff has not provided any cogent argument to the contrary.

    We make this ruling based upon the information that Defendant Kwiatkowski had at the time he filed the charges.  The plaintiff goes into great detail about the various PFA and extensions and whether they were indeed valid or not.  Such information may have provided a defense to the plaintiff regarding the charges, but it does not negate the probable cause at the time when the charges were filed.   Similarly, plaintiff seems to criticize the investigation and its conclusions.  Defendant Kwiatkowski, however, was not required to perform an investigation to determine whether plaintiff was guilty of the charges beyond a reasonable doubt.  His function was to establish probable cause, which we conclude he did.

Additionally, and most pertinent to the question with which we are presented, plaintiff argues whether the underlying facts in the affidavit of probable cause are true or not. Even after considering her arguments, we find that probable cause did exist at the time the charges were filed.

As noted above, Defendant Kwiatkowski first set forth his probable cause analysis in his sworn "Affidavit of Probable Cause". (Doc. 50 at 47-50). Kwiatkowski contacted Luzerne County 911, which informed him that they had no record of an active PFA. (Id. at 48). When contacted, the 911 Center checks with the state police database to determine if a PFA is in effect. (Doc. 52-3, Def. Kwiatkowski's Dep. at 151).[5] Plaintiff has not provided any evidence to counter this statement or to indicate that the 911 Center told defendant that a valid PFA was in effect.

The Luzerne County Sheriff's Department similarly informed the police that they had no record of an active PFA. (Doc. 50 at 48). Defendant Saranchuk performed a follow-up investigation. Upon contacting both entities again he was told that no active PFA existed. (Id.) He also interviewed the subject of the alleged PFA, David Turkos, who

---

[5]The law provides: "The Pennsylvania State Police shall establish a Statewide registry of protection orders and shall maintain a complete and systematic record and index of all valid temporary and final court orders of protection[.]" 23 PA. CONS. STAT. ANN. § 6105(e).

provided Saranchuk with court documents demonstrating that there was not an active PFA against him. (Id.) Plaintiff presents no evidence to indicate that the Sheriff's Office provided a different answer to the defendant regarding the PFA except for a portion of a fax, which is discussed below.

At his deposition, Defendant Kwiatkowski testified that after the Sheriff's Office and Luzerne County 911 office indicated they had no record of a valid PFA, he requested that the prothonotary's office send him the records regarding plaintiff's PFA.[6] (Doc. 52-3, Def. Kwiatkowski's Dep. at 43). Plaintiff, evidently, argues that Kwiatkowski would have realized from these records that a PFA was in effect, and any statement to the contrary is not credible. Plaintiff is in error.

Plaintiff has submitted the deposition of the Luzerne County Prothonotary. During the deposition, the Prothonotary reviewed documents and the docket sheet of the PFA at issue. The docket contains an ambiguous order which may be interpreted as vacating the PFA and scheduling a new hearing. (Doc. 67, Exh. C, Dep. of Luzerne County

---

[6]He did not go into great detail at his deposition as to what these records were and he does not cite to the prothonotary in his affidavit of probable cause.

11

Prothonotary Office (hereinafter "Protho. Dep.") at 21-24). The parties still disagree over whether the order vacated the PFA or not. Additionally on the docket is a motion filed by plaintiff's counsel at the time. The motion is a request for a continuation and it indicates that the PFA had, in fact, been vacated. The motion has an attached verification signed by plaintiff. (Id. at 30-31), This document was evidently the final document entered on the prothonotary's docket prior to the events giving rise to the instant case. (Id. at 33-34).[7]

Further, Def. Kwiatkowski did not state or testify that the prothonotary informed him that the PFA was vacated. He merely stated that he had them send him the information. Specifically, defendant testified that once they were unable to find a record of a valid PFA from the Luzerne County 911 and the Luzerne County Sheriff's Office, he "reached out to the court offices, the prothonotary's, the PFA office, and I requested copies of anything having to do with any PFAs, the history of the PFAs to show – to see if it was valid." (Doc. 52-3, Def. Kwiatkowski's Dep. at 43). In fact, this is in line with the statement of the prothonotary's office that they are

---

[7]The PFA was finally unambiguously vacated subsequent to the facts at issue in this case upon motion of David Turkos on the basis that he had not been served with the original PFA petition. (69).

not responsible for telling the police whether a PFA is valid or not. Their records, however, are open for the public to peruse. (Protho. Dep. at 43).

Thus, rather than destroying Defendant Kwiatkowski's credibility, the deposition of the prothonotary supports his testimony that Kwiatkowski would have believed the order vacated, and that the plaintiff knew it was vacated based upon a review of these records.

Also plaintiff argues that instead of informing the arresting officer that there was no PFA in effect, the Sheriff's Office actually faxed him a copy of the order and thus informed him that the PFA was in effect. Plaintiff's counsel thus states that it is "blatantly false" that the Sheriff's Office informed the individual defendants that they had no record of a valid PFA between plaintiff and David Turkos. (Doc. 69, Pl.'s Oppo. Br. to Def. Dupont's Motion at 13). Despite this strong language, plaintiff submits no convincing evidence to back up this claim. Rather, to support this allegation, plaintiff submitted a portion of a fax that was sent from the Luzerne County Sheriff's Office to the Dupont Police station. It is merely a portion of a fax, four pages of an apparently fifteen- page fax. (Doc. 67 at 11-14). The four pages are a copy of the PFA order which plaintiff asserts was in effect at the time. (Id.) Without any further context for this portion

of the fax, however, it is impossible to conclude that the sheriff's office informed the officer that a valid PFA was in place. As further indication of the confusion over the status of the PFA, Plaintiff herself admits that in March 2013 she was unclear as whether it was in effect or not. (Doc. 69, Pl.'s Oppo. Br. to Def. Dupont's Motion at 13).

Plaintiff does not discuss the affidavit's probable cause statement that the officer contacted the "Luzerne County 911" which informed him that they had no records of an active PFA against David Turkos. (Doc. 50, Aff. of Probable Cause at 2). As noted above, when contacted regarding a PFA the 911 Center contacts the State Police who are mandated by statute to keep a list of the active PFAs.

Thus, plaintiff has not cast any doubt or raised any genuine issues of material fact with regard to the evidence set forth in the affidavit of probable cause. We find that the evidence cited therein rises to the level of probable cause for the crimes charged. This appears to be a case where the plaintiff can reasonably believe she did nothing at all wrong and acted appropriately. That, however, does not automatically mean that the defendant violated her civil rights when he charged her. As unfortunate as it may be for plaintiff, probable cause existed for the charges, and we will

deny plaintiff's motion for summary judgment.[8]

### B. Malicious Prosecution

Count two of plaintiff's complaint asserts a common law malicious prosecution claim against Defendant Kwiatkowski under Pennsylvania state law.[9] (Doc. 40, Am. Compl. ¶¶ 78-84). The elements that a plaintiff must prove to establish malicious prosecution include the following:

1) the defendant initiated a criminal proceeding and the plaintiff;

2) the criminal proceeding ended in plaintiff's favor;

3) the charges lacked probable cause; and

4) the defendant acted with malice.

Kelley v. General Teamsters, Chauffeurs and Helpers, Local Union 249, 544 A.2d 940, 941 (Pa. 1988); Merkle v. Upper Dublin Sch. Dist., 211 F. 3d 782, 791 (3d Cir. 2000).

---

[8] In discussing probable cause, plaintiff cites to a conversation between Defendant Kwiatkowski and another assistant district attorney, Roberts. This conversation took place after the charges were brought and therefore is not relevant to the issue of whether probable cause existed for the charges.

[9] A malicious prosecution claim may be brought under state law or under federal law through section 1983. Plaintiff's amended complaint does not specify which malicious prosecution claim she seeks to bring, but her briefs makes it clear that she asserts a state law malicious prosecution claim. (Doc. 48, Pl.'s Br. at 13-14, setting forth the elements of a Pennsylvania state law malicious prosecution claim).

As we discussed above, Defendant Kwiatkowski had probable cause for the charges brought against plaintiff. Thus, the elements of malicious prosecution cannot be met, and judgment in plaintiff's favor on Count II is inappropriate.

## II. Defendant Kwiatkowski's motion

The next motion for summary judgment we will address was filed by Defendant Kwiatkowski. He moves for summary judgment on the First Amendment retaliation claim and on the malicious prosecution claim. As noted in the prior section, probable cause existed for plaintiff's arrest, therefore, her claims of retaliation and malicious prosecution fail. Thus, summary judgment will be granted to the defendant on these claims.

The third claim against Defendant Kwiatkowski is an abuse of process claim.

> The elements of abuse of process are (1) an "abuse" or "perversion" of process already initiated (2) with some unlawful or ulterior purpose and (3) harm to the plaintiff as a result. <u>Williams v. Fedor</u>, 69 F. Supp. 2d 649, 668 (M.D. Pa. 1999).
>
> Abuse of process usually pertains to situations involving extortion by means of attachment, execution or garnishment and blackmail by means of arrest or criminal prosecution. Moreover, there is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries

>out the process to its authorized conclusion.  The touchstone of the tort is that, subsequent to the issuance of process, a party has perversely, coercively, or improperly used that process.

Cameron v. Graphic Management Assocs., Inc., 817 F. Supp. 19, 21 (E.D. Pa. 1992) (internal citations and quotation marks omitted).

Here, judgment is appropriate for the defendant on the abuse of process claim.  No evidence has been presented of a perverse, coercive or improper use of process subsequent to its issuance.  At best, plaintiff could establish that defendants merely carried out the process to its authorized conclusion, that is dismissal of the charges at the preliminary hearing.  We will, therefore, grant summary judgment to Defendant Kwiatkowski on this issue.

**III. Defendant Saranchuk's motion**

Next we will address the motion for summary judgment filed by Defendant John Saranchuk.  Plaintiff seeks to hold Defendant Saranchuk liable under the same causes of action that she asserted against the other individual defendant, Jason Kwiatkowski.  Specifically, these counts are first amendment retaliation, malicious prosecution and abuse of process.  For the reasons set forth above with regard to Defendant Kwiatkowski, summary judgment is appropriate in favor of Defendant Saranchuk.

17

Probable cause existed for plaintiff's arrest, and plaintiff cannot establish any abuse of process. Accordingly, summary judgment will be granted in favor of Defendant Saranchuk.

**IV. Dupont Borough's motion**

Count three of plaintiff's complaint asserts a 42 U.S.C. § 1983 claim against the Defendant Dupont Borough (Doc. 40, Am. Compl. ¶¶ 85-87). The borough now moves for summary judgment on this count.

The amended complaint attempts to hold the borough liable because "the policies and/or customs of defendant Dupont Borough . . . permitted its police officers to violate the constitutional rights of citizens." (Id. ¶ 86). As noted above, however, we will grant summary judgment to the individual defendants on plaintiff's claims that they violated her constitutional rights. We have found that they did not violate her rights. Because they did not violate her rights, the borough cannot be held liable for have policies or customs which allowed for such violation. Accordingly, summary judgment will be granted to Defendant Dupont Borough.

**Conclusion**

After a careful review of this matter, we will grant summary judgment to the defendants and against the plaintiff. Probable cause existed for the

plaintiff's arrest and she has not established any abuse of process. An appropriate order follows.

**Date: March 31, 2017**               **s/ James M. Munley**

                                                **JUDGE JAMES M. MUNLEY**
                                                **United States District Court**